Mr. Harris, you're appearing pro se, representing yourself only. Myself and the other three. I'm not sure you have standing to represent anybody else. You're not a lawyer. So you're representing yourself only and the other people are not making an appearance. Yes, sir. All right. Go ahead. Basically what we're looking to do is we're trying to turn this thing back to a court so we can have deposition and to look into the charges, you know, to have a chance to show we have cause to go to court on this thing. You want more discovery. Yes, sir. The way I read it, you did not oppose the cutoff of discovery in the trial court. To my understanding, we did. I mean, we were cut off at the pass of every court. That was my understanding. We did oppose the fact that there was no discovery allowed by the court. But I'm here to to ask that you read all the information I'm assuming. And while this is a qualified immunity case and the court ruled that discovery should be stayed until resolution of that issue, you did not oppose that as far as I can tell. Well, to my knowledge, we did oppose that. Can you point to an opposition to that? To my knowledge that we opposed that they did not allow us to have discovery. See, qualified immunity is different. It's not immunity from liability or from having to pay anybody any money. It's immunity from being sued in the first place. So there's a different approach to discovery in this context. And here the court simply said, well, we're not going to get into discovery until we take a look at qualified immunity. And I didn't see where you opposed that. Well, the judge did not allow us to do discovery because of the. Because, you know, because of his job standing and he was saying the judge was saying that there was not enough evidence to show that we had cause to have discovery in our request or in our charges. And I don't see that. We had four people that went, you know, that sent in information about what happened and, you know, that were, you know, we didn't collude together to give information to each other. We were four individuals that gave basically the same information. And then the judge says there's no evidence to give us the opportunity to do discovery. So I believe there was enough evidence to at least give us discovery. What would you try to show by that discovery? What is the strongest – what is your strongest statement of the constitutional right that was violated that that discovery would show? Well, I've been looking through some of this stuff. And just what Mr. Houston did when he entered in the relationship with the judge to get the warrant, there are some questionable things there which I don't believe were exactly truthful. I believe there's some things he said that he wasn't qualified to even say. I mean, for instance, he. I don't know. Okay. He said on page six here, the CTC has devised and implemented schemes and involvement. Are you reading from the affidavit? I'm reading from page six of his request for the warrant, which his request was not even signed. So, you know, I look at that. If it's not signed, it's not a valid piece of paper. But that's my – that's the way I look at it. It says the CTC has devised and implemented schemes involving the marketing of and use of various domestic entities, domestic and foreign shell entities. All right. And if you look at his – if you look at his education and what he gave so far as his qualifications, it never says anything about he has any legal information or knowledge about trust documents or about, you know, to be able to make that statement. And besides, according to what I've understood, the trust law has not been taught for over 20 years in the colleges, universities. I mean, ask yourself how much knowledge you have about trust law. In 20 years was – it's been about 25 years from when this was – this information was given. Okay. There's been no bar question about trust in 20 years. All right. Let's see. What leads you to believe that attorneys have little knowledge, specifically relationship to trust? All right. And there's a book – in a book, How to Avoid Probate by Norman Deasy, over 1,000 attorneys interviewed by the – by the use of trust for probate avoidance, less than 1 percent were found competent. Okay. And they found that only 9 or 10 of 1,000 attorneys were confident to do trust law. All right. And this was when the trust was being taught in college. All right. And based on what I've read in his request for this warrant, there are things that I question just on the little bit of knowledge I know. So his – his request is – is not right. I mean, it just doesn't make sense to me that he can present this to a judge and she sign and give a warrant and the information is not – is not accurate. I mean – I'm sorry. Go back in just a minute. Read again for me the information that he – his statement in the request for the affidavit that you say is inaccurate. The statement says the CTC has devised and implemented schemes involving the marketing of use of various domestic entities and foreign shell entities and the offshore banking accounts for the purpose of evading and defeating federal income tax legally owned by CTC hierarchy and their clients. Okay. And see, I question that own because, see, that was one thing that – and I've gone through and listened to a lot of these things, and that was one of the things that we have a non-ownership manual. That's the whole idea of, you know, using corporations and local liability corporations is to remove liability, to remove things out of your personal purview so you can keep lawsuits down, you can avoid things of that nature. But that doesn't mean you don't own it. Well, no. That's not – I mean – and see, that's – and the way these things work – That is to say, I can own a corporation or I can own a 50 percent share of a corporation, but the fact that the corporation is a limited liability entity doesn't mean I don't own it. Well, I mean, that's – that may be true, but I'm saying the statement he made here, he's not qualified – he doesn't have the education behind his background to be able to make this statement. Well, are you saying that the statement is not true, that these entities are not – I'm saying this statement, along with quite a few other statements, were not true that I've read through this thing. I haven't read through the thing completely, but I'm saying we need a chance to have discovery to be able to show some of these things which were not valid and which were not, you know, not true. Mr. Harris, you've made your case pretty clearly. Let's hear from the other side, and we'll give you an opportunity to respond. Okay. Thank you. Thank you very much, Chief Justice Schroeder, gentlemen of the Court. My name is Ray Ruckstel. I'm a little nonplussed, ladies and gentlemen, as to how to respond. I want to say a few things in response to Mr. Harris's comments, and I'm, of course, here to answer the Court's questions. Let me say this. As far as the stay of discovery is concerned, it's well settled that questions of qualified immunity relate to immunity from suit, and that this Court in Meraziti and the Supreme Court in Harlow have held that and have ruled that the threshold questions of immunity should be decided before any civil matter proceeds to discovery. So it's perfectly appropriate for this Court. Well, but that doesn't – I'm not sure that this is fatal to your position. It may be in certain circumstances that in order to rule appropriately on the qualified immunity motion, you need some discovery. Well, you know, the – See, the rule is not that in a qualified immunity motion there is never discovery. That's not the rule. Read our Butler case and you'll see that. I respectfully disagree. I think it is the rule. Wrong. The threshold questions of qualified immunity have to be determined before discovery proceeds. Otherwise, everybody – You may still win this case. But I have to tell you that sometimes you need discovery, limited discovery, but sometimes you need discovery before you can decide the qualified immunity motion. There may be such times, Judge Fletcher. This is not the time. That I think is your better argument. And let me respond to Mr. Harris's comments about the alleged false statements in the affidavit. This issue was not alleged in their complaint. The plaintiffs challenged the face of the warrant. They challenged the issues regarding a failure to identify Federal violations on the face of the warrant, failure to attach the affidavit to the warrant, a failure to present the affidavit to individuals on the premises, failure to present the warrant to individuals on the premises. There are a string of allegations in the plaintiff's complaint in this Bivens action. False statements, however, in the affidavit are not one of the allegations and they are not a part of this lawsuit. And for Mr. Harris to now indicate to the Court that discovery would have allowed them to go behind the affidavit and challenge the affidavit is beyond this lawsuit. In addition, the vehicle, the Bivens Act, I respectfully submit, is not the action to challenge an affidavit in a search warrant. There are other means during a trial or during a criminal proceeding or when the evidence is introduced, when there is a motion to quash the warrant, is when a party may challenge the affidavit.   with another agency or any agency that has prior experience. Breyer. Make a stand-alone motion for the return of property. Stand-alone motion for the return of property having nothing to do with criminal cases or civil cases. That was not filed. There's no motion here for return of property. In fact, I think this case reflects the internal service, the internal IRS agents acting at their best because they returned property. Whatever property was taken, it was returned. And in sum and substance, ladies and gentlemen, I think this is a case where there are no constitutional violations in issues where there may be a constitutional issue involved. The agent is entitled to qualified immunity because the law is not clearly established. In the complaint, it says plaintiff Krim previously filed a motion for return of property under 41e. The government returned the property without any opposition whatsoever to the motion. Judge Trott, that motion was never filed in Federal district court. I have looked for that motion. I have asked for them to provide me with the motion. I've asked the agents, the IRS agents, where, pray tell, is this motion? I've never seen a motion. I think what happened – I should tell you, Judge Trott, such motion was never filed in the District of Nevada. And as best as I know, it was never filed in the Eastern District of Pennsylvania where the underlying criminal grade jury investigation is. I can't tell you what happened. I know that the agents returned the property. I think what happened is that some of the subject called the IRS agents, asked for their property, and it was returned to them. Because I saw that reference to the motion to return, and I wondered what that was all about. I, Judge Trott, I have never seen a motion to return property, and it's not a part of this record at all. To add in sum and substance to your knowledge, did the other side oppose the stay on discovery and ask under Butler for some more time or some limited discovery? No, sir, they did not. Thank you, counsel. Thank you very much. Mr. Harris, we'll give you 30 seconds to respond. Basically, the information we have now is if we wouldn't have had it if we hadn't filed the first complaint, and so any evidence we have now that we can use to further our case, I feel that we should have that right. And that's basically what I think we should have. I mean, we should have this information and use it for discovery and look if we can add to the record. And I think we should have this information without the request. Thank you, sir. We understand the case just argued is ordered and submitted.
judges: Schroeder, Trott, W. Fletcher